### HENDERSON v. TRAVELERS' INS. CO.

#### (Circuit Court, D. Wyoming. June 22, 1894.)

LIFE INSURANCE — WAIVER OF CONDITION IN POLICY — POWER OF GENERAL AGENT.

R. & J. were the general agents of the T. Ins. Co., having authority to receive and pass upon applications for insurance and complete contracts without referring them to the company. One H. applied to them for life insurance, and informed them that he was in danger of being attacked and killed, and desired a policy which would protect his family in that event. R. & J. assured him that the policy to be issued would be good in such case. The policy issued, which was received and accepted by H. without reading it, contained a condition to the effect that it should not be good if the insured came to his death by intentional injuries inflicted by another person. Upon renewing the policy, a year after its issue, H. again inquired if it would be good in case he was killed, and R. & J. again assured him that it would. *Held*, that the condition as to death by intentional injury was waived, and that the policy should be reformed by omitting said condition.

This was a suit by Fannie L. Henderson against the Travelers' Insurance Company to reform a contract of insurance. The cause was heard on the pleadings and proofs.

A. C. Campbell and R. W. Breckons, for plaintiff.
Potter & Burke, for defendant.

RINER, District Judge. This is a bill in equity to reform a contract of insurance. The bill alleges, in substance, that there was a mutual mistake in the agreement, as reduced to writing, in that the said agreement, by its terms, provided that, in case said George B. Henderson (the insured named in the policy) came to his death from intentional injuries inflicted upon him by another person, there could be no recovery upon the policy, whereas the true agreement, made by and between the insured and the defendant company, was to the effect that, if the said George B. Henderson should come to his death from intentional injuries inflicted upon him by another person without his consent, the defendant would pay to the plaintiff herein (the beneficiary named in the policy) the sum of $10,000. The testimony shows that Henderson paid the premium on the 7th day of January, 1889, and received a policy which had printed upon the back, "This

insurance does not cover [after enumerating a number of cases] intentional injury [inflicted by the insured or any other person]"; that he again, on the 7th day of February, paid an additional premium of $50, and received a renewal receipt, renewing the policy for another year. The insurance in this case was solicited by one Gideon M. Kepler, a clerk in the employ of the firm of Riner & Johnson, who were the agents of the defendant company at Cheyenne. I think, under the evidence in this case, it must be held that Riner & Johnson were the general agents of this company. They had the power, as shown by the evidence, to complete the contract of insurance without referring the application to the company. They solicited the insurance, received the application, and, upon payment of the premium, delivered the policy, and determined, without referring the matter to the company or any of its officers, whether the particular risk was a proper one; and I think the power given, rather than their territorial jurisdiction, must determine whether or not they were general agents. The testimony shows that Mr. Kepler, the clerk who solicited insurance for this firm, was employed for that purpose; that he not only solicited insurance, but that he received the premiums, for the firm, and filled out and delivered policies, signing the firm's name thereto. In this particular instance he solicited the insurance, and received the premium, which was paid by check made payable to his order, and which he indorsed to the firm; the policy being filled out and the firm name signed thereto by Mr. Ransom, another clerk in the employ of this firm. The renewal receipt, which was issued a year later, was also solicited by Kepler, and was filled out and the firm name was signed thereto by him, and the premium was again paid to him by the insured, and by him paid over to the firm. Authorized, as he was, by this firm, to solicit insurance, receive premiums, make out and deliver policies, I think it must be held that his act was the act of these insurance agents so far as the rights of the insured under the policy are concerned. Mr. Kepler testifies that he solicited this insurance; that the insured was, at the time, stopping at the Inter Ocean Hotel, in Cheyenne, Wyo.; that the conversation took place in a little anteroom behind the washroom in the hotel; and that no one else was present at the conversation. He further testifies that Mr. Henderson, the insured, explained to him fully his situation and business, and stated, in the language of the witness, that "they were after him up in that country, and he would like the insurance policy as a matter of protection to his family." He further testifies that Mr. Henderson asked for a policy that would protect him against anything that would happen to him upon a ranch; and that he stated to Mr. Henderson, at the time, that this policy which he proposed to issue would insure him against any and all kinds of accidents, with the exception of encounter between man and man in the way of fighting; and that he particularly stated to Mr. Henderson that they would pay to Mrs. Henderson, his wife, the amount of the policy, if he was accidentally killed, or if any one killed him as he was going to and from the city; and that he assured Henderson, both at the time the insurance was taken

and at the time of renewal, in response to inquiries propounded by Henderson, that in such a case "this policy would cover him." He further states, on cross-examination, that he delivered the policy to Henderson at Maston's store; that Henderson took him to the Inter Ocean Hotel, and gave him a check for the policy; that Henderson put the policy in his pocket, and did not look at it. He further testifies that he supposed, at the time he delivered the policy to Henderson, it did cover intentional injury inflicted upon him by some other person without his consent, and that he repeatedly said to Henderson, during their conversation, that in case he came to his death in this way the company would pay to Mrs. Henderson the sum of $10,000. As to the conversation which took place between Henderson and Kepler, at the time the renewal was made, Mr. Kepler is fully corroborated by Mr. Hosford, who was present at that conversation. He testifies that Henderson, at the time, turned to Kepler, and said to him (after Hosford had expressed some doubt about the insurance), "Is this all right?" and that Kepler replied, "Yes"; that Henderson then informed him that he was liable to be killed, and that he wanted to insure his family so that in case he was taken away they would be cared for; and that Kepler again assured him that the policy was all right. Mr. Kepler further testifies that his recollection is that he prepared the application, and that Mr. Henderson signed it. However this may be, it is apparent, from the character of some of the answers, that they were, at least, suggested by him.

I am entirely satisfied, from an examination of the testimony in this case, that, if it was within the power of general agents (as I hold Riner & Johnson to be in this case) to waive the condition of this policy, it must be held to have been waived in this case; because Mr. Henderson, as the evidence discloses, had some misgivings as to whether the policy covered a case such as resulted in his death. In one of the conversations with Mr. Kepler, in relation to this insurance, Henderson called Kepler's attention directly to this matter, and said that he wanted to be sure about it; that he preferred to pay a higher premium, if it was necessary, to have the policy cover a case of intentional injury inflicted upon him by another without his consent; and that he only accepted the policy and paid the premium upon being assured over and over again, by the soliciting agent, that the policy did cover such a case.

Upon the question of the power of the general agents of an insurance company to waive a condition of this character, the authorities are very much in conflict. That Kepler, who solicited this insurance, was acting within the apparent scope of his authority, must, under the evidence, be conceded. While I am aware that there are many authorities holding to the contrary, I am inclined to the opinion that the acts and assurances of Kepler should be held to be the acts and assurances of the company, and that the policy in its present form does not express the true agreement between the insured and this company. A decree will be entered reforming the contract as prayed in the bill.